Good morning and may it please this court, my name is Nick Beef and I represent Mr. Garcia-Lopez. This appeal was brought and asked two questions to be reviewed. The first question is in regard to a suppression motion that was made and a hearing that followed. In that issue, the main problem at least that the defense raised was whether or not there was a Terry stop and if there was a Terry stop, whether or not the officers could take that next step and look into a vehicle and look underneath a jacket that was laying in the back seat. The second issue is in regard to some statements that the prosecution made. Those statements were in regard to the defendant's 5th and 6th amendment rights, his right to counsel and his right to silence after his arrest. Regarding the second issue, I wanted to bring light to an error that I made in my briefing. On page I think it's 10 of my brief, I cited to a portion of the excerpt of record in regard to a Detective Shaw in support of the proposition, the argument that the Detective Shaw gave testimony to the jury, that is incorrect. Detective Shaw's testimony was in regard to the suppression, not to the jury. So I wanted to make that clear for the record. That was my error. I believe it's on page 10 of my opening brief. The government briefly cited to it. I've talked to counsel about it, but that should not be considered for this court and that is my error. In regard, and going back to my first issue and why we brought this issue to the attention of this court, in looking at the record and the factual basis surrounding first the defense's motion, the government stance and ultimately the district court's ruling, it is largely factual in nature. First of all, let me get the standard straight. So you're challenging whether or not there was sufficient cause for a Terry stop, is that right? Yes, Your Honor. Okay, so first of all, what's the standard for making the Terry stop itself? The standard, Your Honor, is, let me refer back to my notes. In other words, what does the officer have to perceive? The officers have to, and Terry is in very limited circumstances, officers may briefly detain an individual suspected of criminal activity. So it's some kind of suspicion, right? Yes, Your Honor. So are you saying there's no suspicion here? Here, Your Honor, we look at the record. The record shows us that it's 9.30 at night in Yakima. The record shows us that officers did not pull over this vehicle, but they simply stopped to inquire and question a driver as to why his headlights weren't on when he turned into a hotel. There is some evidence in the record that evidently this area is known as a high crime rate. But again, that's not enough to justify a Terry stop. I'm really puzzled by this argument. As I understand it, your client was wearing gang colors. His hands were furtively underneath a jacket. The young woman who was outside the car was cold. They asked for the jacket. He was, you know, doing this. Isn't that the quintessential situation of a Terry stop? They're worried they're going to get shot. And it turned out he did have a gun under there. So given all of the circumstances, I'm really puzzled that you're, you know, riding this horse. Why would this not, under any circumstances, at the very least, justify a Terry stop? Your Honor, regarding a Terry stop, there still has to be the belief that there is criminal activity afoot. Here there was an inquiry made by, I believe it was Officer Miller. Well, you say criminal activity afoot. Don't they have to just reasonably suspect that there might be something going on? You yourself have described here the driving without lights in a high-crime area. You know, they just ask him to get out. They're certainly entitled to do that. You don't question that, right? No, I mean, they're certainly entitled to question. But I think as a defense counsel at the suppression hearing correctly pointed out, they're also, that being the individuals, are also entitled to stay silent and not discuss matters with the patient. Okay, but that's a separate issue. In this case, that's not what we're really talking about at this point. You're talking about what happened after he got out. But, you know, here the young lady got out. He didn't get out. Instead, he was in there. She was cold. They asked for her jacket. Instead of giving her the jacket, he reached for some other stuff. He wanted to take off his own shirt, and his hands were underneath this jacket. I mean, if I were a police officer, I'd be very concerned about that. It turned out they were absolutely right. There was a firearm underneath her jacket. And, Your Honor, I guess looking to hindsight, the officers were correct. But how they got to that gun is the issue. And my position, and I believe the case law supports that position, is that in order to effectuate this Terry Stop or this frisk for firearms, these officers have to believe that there is some sort of criminal activity afoot. And in order to continue on, or as the circuit has indicated, police must harbor a reasonable suspicion that the subject is frisked, is armed, and dangerous. And so just to have, and this is in the record, just to have the facts that this individual does not want to hand up a jacket I believe is insufficient under this record to qualify that the officers had this reasonable suspicion that he is armed and dangerous. That's what they have. All they have is an individual refusing to cooperate with their request to hand up a jacket to a cold woman. So under the circumstances, you believe that an officer without the predicate information that you're talking about is defenseless against somebody in this situation. If your client had suddenly taken the gun out from underneath the jacket and shot the officers, you'd say, well, you know, that's a darn shame. But he didn't have any right to check underneath this jacket where his hands were moving furtively. Is that what you're telling us? Your Honor, regarding the furtive movements of the hands, I don't believe that is contained in the record. What we do have in the record is that my client, there was requests made, he audibled in English, and then he said, I don't understand in Spanish because I don't speak English. There was that issue. There was also the issue that he handed up another jacket, not the jacket that the officer requested. But couldn't the officer reasonably suppose that he didn't hand up what was requested because he was hiding something? Hiding something, but remember, Your Honor, the requirement is that the officers must have a reasonable suspicion that that person is armed and dangerous. You're saying that's what Terry says? Well, to make that next step. Just go back. You're saying that that's what Terry says, that an officer has to have a reasonable suspicion that the person he asks to get out of the car and frisk is armed and dangerous? Boy, that's a new concept. Your Honor, I'm pointing to Arizona v. Johnson, and that is if a Terry condition is met in order to go that next step, because this is a two-part stage. If we even get to Terry, which I still disagree with the government that we even get there, but even if we get there, we still have to have that next step in order for those officers to go in and check to see whether or not he was indeed armed and dangerous. And so there is my quarrel as to the second step, Your Honor. And briefly, Your Honor, I see I've got about 30 seconds in regard to the second issue, and I did want to note that the government did make several statements, albeit I am taking out Detective Shaw's statement because that was in my air, but there were several statements made at opening, also on direct of Officer Miller, on cross-examination of the defendant himself, and then very importantly at closing right before jury deliberations that did point to my client's Fifth and Sixth Amendment privileges. Thank you. Thank you. May it please the Court, my name is Shawn Anderson and I'm appearing on behalf of the government. Both the issues presented by the appellant in this case really turn on the circumstances that go back to that evening on February 10th of 2005. On that evening, you had a Yakima gang unit patrolling an area that was known for criminal activity. They went by a particular motel. The motel was known for prostitution, drug dealing, according to the officers. They see a vehicle. It's evening. They see a vehicle pulling into the parking lot. We do know the facts. Is there anything you heard today that's not adequately covered in your brief? No, there isn't, Your Honor. Thank you. The case is argued. We'll stand and submit it. Thank you. We'll next hear argument in Coles v. Eagle.
judges: Kozinski, Tashima, Smith